**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
GALVESTON DIVISION**

| | | |
|---|---|---|
| HYTKEN FAMILY LIMITED, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. G-05-563 |
| | § | |
| FRANK SCHAEFER, FRANK SCHAEFER | § | |
| CONSTRUCTION, INC., SCHAEFER | § | |
| FAMILY TRUST, and GALVESTON | § | |
| SHORES, L.P., | § | |
| | § | |
| Defendants. | § | |

## ORDER GRANTING DEFENDANTS' MOTION TO DISMISS PURSUANT TO FED. R. CIV. P. 12(B)(1) FOR LACK OF SUBJECT MATTER JURISDICTION

This case arises out of a dispute concerning real property in Galveston County, Texas. Plaintiff Hytken Family Limited ("HFL") filed suit in this Court on October 20, 2005, against Frank Schaefer, Frank Schaefer Construction, Inc., Schaefer Family Trust, and Galveston Shores, L.P. (collectively "Defendants"). Now before the Court are the equally well prepared Defendants' Motion to Dismiss Pursuant to FED. R. CIV. P. 12(b)(1) for Lack of Subject Matter Jurisdiction, and Response thereto. For the reasons stated below, Defendants' Motion is **GRANTED**, and HFL's claims are hereby **DISMISSED WITHOUT PREJUDICE**.

## I.  Background

This dispute arises out of a failed real estate transaction concerning certain land in Galveston County, and the ownership rights thereto. The facts surrounding the transaction are heavily contested, but essentially boil down to this: in the spring of 2004, Kent Hytken and Defendants entered into negotiations concerning the acquisition of certain land in Galveston County, Texas by means of a joint

-1-

venture.  HFL claims that the negotiations were extensive, and that Kent Hytken and Defendants worked to memorialize the agreement in writing, that an oral agreement was reached, but nothing was ever signed.  The drafts of the written agreement contemplate an entity referred to as the Hytken Family Limited Partnership ("HFLP"), which would be managed by Robert M. Hytken, Kent Hytken's 91-year-old father.  HFL claims that Defendants breached an oral agreement with Kent Hytken regarding the transaction, and alternatively claims that Defendants made fraudulent misrepresentations to Kent Hytken.  HFL obtained the right to pursue these claims by means of an assignment, as explained more fully below.  Originally, Robert M. Hytken brought suit against Frank Schaefer, Noleen Schaefer, and the Schaefer Family Trust ("Schaefer Defendants") in the 56th Judicial District Court of Galveston County.  Robert Hytken brought suit even though it was Kent Hytken who conducted the negotiations with Defendants.  There is no indication in the briefs and exhibits that Robert Hytken had anything to do with the negotiations other than being named as manager of the contemplated joint venture.  In his state court petition, Robert Hytken made claims for breach of contract, promissory estoppel and detrimental reliance, fraud, and economic duress.  The Schaefer Defendants filed a counterclaim seeking a declaration that they owned the property free and clear of Hytken's claims.

Then, on October 19, 2005, the day before this lawsuit was initiated in this Court, HFL was incorporated as a Nevada corporation.  As stated before, the exhibits submitted by the Parties reveal that HFL was originally contemplated as a limited partnership rather than a corporation, and that it would be managed by Robert Hytken.  HFL uses as its business address the address of the Nevada attorney who performed the incorporation of HFL.  HFL's only shareholders are Robert Hytken and Jordan Hytken, Kent Hytken's 21-year-old son. Jordan Hytken is the President and Secretary of HFL, but he has not been involved with the management of HFL beyond the organizational meeting and

initial shareholder meeting and the co-decision with his father as to which counsel to retain for the purposes of this lawsuit.  Robert Hytken is the Treasurer of HFL.  Kent Hytken is HFL's designated corporate representative for the purposes of this lawsuit, and he paid the necessary fees for HFL's incorporation.  Other than being the plaintiff in this lawsuit, HFL has conducted no other business activities.

On October 20, 2005, Robert Hytken individually and on behalf on "Hytken's Partnership 1 LLC" assigned "all of his rights, claims, title, interest and choses in action in the 96 acres of Galveston Beach Land that involves Source One Capital to Hytken Family Limited."  On that same day, HFL filed suit in this Court.  On October 25, 2005, Hytken nonsuited his State Court action.  On November 18, 2005, Defendants moved to stay this cause of action to allow the state court to resolve the Schaefer Defendants' counterclaim, which they argue is still pending before the state court.  That Motion was denied by this Court on February 6, 2006.  On November 29, 2005, the State Court signed an order of nonsuit and dismissed the state court action without prejudice.  On February 1, 2006, Defendants filed this Motion to Dismiss for Lack of Subject Matter Jurisdiction, arguing that diversity jurisdiction had been improperly and collusively manufactured to invoke the jurisdiction of this Court.

## II.  Motion to Dismiss for Lack of Subject Matter Jurisdiction

District courts are powerless to exercise jurisdiction in excess of the limited jurisdiction statutorily conferred upon them by Congress.  *See Margin v. Sea-Land Servs., Inc.*, 812 F.2d 973, 976 (5th Cir. 1987).  A case is properly dismissed for lack of subject matter jurisdiction when a court lacks the statutory or constitutional power to adjudicate the case.  *See Strain v. Harrelson Rubber Co.*, 742 F.2d 888, 889 (5th Cir. 1984). If the defendant subsequently challenges the plaintiff's stated basis for jurisdiction, the plaintiff bears the burden of establishing that jurisdiction exists.  *See Harvey Const. Co. v. Robertson-CECO Corp.*, 10 F.3d 300, 303 (5th Cir. 1994); *Margin*, 812 F.2d at 976.

-3-

A court's consideration of such jurisdictional disputes should, however, focus only on discerning "some discreet jurisdiction requisite," as indicated by the facts alleged in the plaintiff's complaint; the inquiry should not address the merits of the plaintiff's claim. *Green v. Ferrell*, 664 F.2d 1292, 1294 (5th Cir. 1982).

### III.  Diversity Jurisdiction and the Anti-Assignment Provisions of 28 U.S.C. § 1359

A case can be properly brought in federal court when the parties are citizens of different states and the amount in controversy exceeds $75,000. 28 U.S.C. § 1332. The diversity statute has long been interpreted to mandate a rule of "complete diversity," meaning that the diversity statute "applies only to cases in which the citizenship of each plaintiff is diverse form the citizenship of each defendant." *Caterpillar, Inc. v. Lewis*, 519 U.S. 61, 68, 117 S. Ct. 4677, 136 L. Ed. 2d 437 (citing *Strawbridge v. Curtiss*, 7 U.S. (3 Cranch) 267, 2 L. Ed. 435 (1806)). Generally, the plaintiff's complaint must allege facts showing that complete diversity exists. *See, e.g.*, *Getty Oil Corp. v. Ins. Co. of N. Am.*, 841 F.2d 1254, 1258–59 (5th Cir. 1988).[1]

In this case, HFL's Complaint does allege facts showing that complete diversity exists: HFL is a Nevada corporation and Defendants are all California or Texas citizens.[2] However, Defendants argue that diversity jurisdiction does not exist because it was improperly manufactured in violation of 28 U.S.C. § 1359, which provides that "[a] district court shall not have jurisdiction of a civil action in which any party, by assignment or otherwise, has been improperly or collusively made or joined to invoke the jurisdiction of such court." The purpose of this statutory provision is to "prevent the litigation of claims in federal court by suitors who by sham, pretense, or other fiction would acquire

---

[1]None of the Parties allege that federal question jurisdiction exists, and the Court has found nothing in the record to suggest that it does.

[2]The amount in controversy is well over $75,00 and is not in dispute.

spurious status that would allow them to invoke the limited jurisdiction of federal courts." *Nolan v. Boeing Co.*, 919 F.2d 1058, 1067 (5th Cir. 1990). *See also Kramer v. Carribean Mills, Inc.*, 394 U.S. 823, 828–29, 89 S. Ct. 1487, 1490, 23 L. Ed. 2d 9 (1969). Application of § 1359 has "generally been restricted to circumstances involving assignment of interests from non-diverse to diverse parties to collusively create diversity jurisdiction." *Delgado v. Shell Oil Co.*, 231 F.3d 165, 178 (5th Cir. 2000).

In determining whether diversity jurisdiction has been created in an improper or collusive manner, the Court must consider the totality of the circumstances. Since the Supreme Court's decision in *Kramer*, courts across the country have considered the following factors: (1) whether there was nominal or no consideration involved in the assignment; (2) whether the assignee had any previous connection to the assigned claim; (3) whether there was a legitimate business reason for the assignment; (4) whether the timing of the assignment suggests it was merely an effort to secure federal diversity jurisdiction; (5) whether the assignor exercises any control over the conduct of the litigation; and (6) whether the assignor retains any interest in the action such as receiving a portion of the assignee's recovery. *See Long & Foster Real Estate, Inc. v. NRT Mid-Atlantic, Inc.*, 357 F. Supp. 2d 911, 922–23 (E.D. Va. 2005) (collecting cases). *See also* 14 CHARLES ALAN WRIGHT, ARTHUR R. MILLER & EDWARD H. COOPER, FEDERAL PRACTICE AND PROCEDURE § 3639 (3d ed. 1998).

## III. Analysis

Defendants argue that the assignment of claims to HFL was collusive and improperly made in violation of 28 U.S.C. § 1359. A careful analysis of the aforementioned factors compels the conclusion that the assignment to HFL in this case was performed for the sole purpose of manufacturing federal diversity jurisdiction in violation of § 1359. *See Harrell and Sumner Contracting Co., Inc. v. Peabody Petersen Company*, 546 F.2d 1227, 1229 (5th Cir. 1977).

-5-

*A. Consideration*

The first factor is whether there was nominal or no consideration involved in the assignment. *See Long & Foster Real Estate, Inc.*, 357 F. Supp. 2d at 922 (citing *Pasquotank Action Council, Inc. v. City of Virginia Beach*, 909 F. Supp. 376 (E.D. Va. 1995)).  *See also Kramer*, 394 U.S. at 827–28, 89 S. Ct. at 1490.  The circumstances surrounding the assignment of the interest in this lawsuit are murky and somewhat contradictory.  A review of the exhibits as submitted by the Parties demonstrates the existence of two different assignments: one from Robert Hytken to HFL, and the other from Kent Hytken to HFL.  As to the former, HFL has submitted a copy of an assignment executed and notarized on October 20, 2005 from Robert Hytken, "individually and on behalf of Hytken's Partnership 1 LLC" to HFL assigning "all of his rights, claims, title, interest and choses in action in the 96 acres of Galveston Beach Land that invokes Source One Capital."  This assignment makes no mention of any consideration paid by HFL to Robert Hytken.  As to the latter assignment, Kent Hytken testified in his deposition that he assigned his interest in the dispute to HFL.  This assignment–from Kent Hytken to HFL–is the only assignment made mention of in the Complaint.  No copy of the assignment from Kent Hytken to HFL has been produced at this time, but in his deposition, Kent Hytken claimed that he assigned his rights "for $10 and other good and valuable consideration."  He also admitted in his deposition that no other good and valuable consideration was ever paid to him and he could not recall whether he had received the $10.  Regardless of which assignment the Court considers, the actual consideration paid in both circumstances is either nominal or nonexistent.  This factor supports a finding of an improper and collusive assignment.[3]

_____

[3]Furthermore, it is far from clear at this stage what HFL actually possesses in terms of an interest in this litigation.  There is no written record of an assignment from Kent Hytken to HFL, even though this is the assignment discussed in HFL's Complaint and in Kent Hytken's deposition.  Next, the assignment executed by Robert Hytken involves no consideration and it mentions an

*B.  Previous Connection of Assignee to the Claim*

The second factor to consider is whether the assignee has had any previous connection to the assigned claim.  *See Long & Foster Real Estate, Inc.*, 357 F. Supp. 2d at 922.  Defendant claims that HFL was set up for the purpose of creating diversity.  In response, HFL claims that Hytken Family Limited was the entity that the joint venturers originally contemplated as the entity that would take an interest in the property that is the subject of this dispute, and therefore it is the real party in interest.

HFL is a Nevada corporation that was created the day before it filed this lawsuit.  It was not in existence at the time of the facts giving rise to this lawsuit, and it was not created until approximately 10 months *after* Robert Hytken filed the predecessor lawsuit to this litigation in state court.  HFL has produced documents showing that an entity referred to as the Hytken Family Limited Partnership ("HFLP") was contemplated by Kent Hytken and Defendants during contract negotiations, and that HFLP would be managed by Robert Hytken.  In his deposition, Kent Hytken admitted that HFLP was originally contemplated as a limited partnership and that there would also be a corporate general partner, Beachtown Construction Management and Sales.

The Court finds HFL's argument that it is the appropriate party to bring this lawsuit disingenuous.  First, the entity contemplated in the draft agreements was a limited partnership, not a corporation.  Second, Hytken Family Limited was created 10 months after this dispute was initially made the subject of a lawsuit.  Third, Hytken Family Limited was created the day before this lawsuit was filed.  At the time of the events giving rise to this lawsuit, HFL was a fictitious entity that had yet to come into existence.  Additionally, other than the duties that arise from being the plaintiff in this

entity that the Court has not found mention of in any of the other exhibits.

lawsuit, HFL conducts no other business activities.[4]   The facts show that HFL, the assignee, had no previous connection to the assigned claim.  This factor supports a finding of an improper and collusive assignment.

   *C.  Reason for the Assignment*

   The third factor is whether there was a legitimate business reason for the assignment.  *See id.* at 922 (citing *Bullard v. City of Cisco, Texas*, 290 U.S. 179, 54 S. Ct. 177, 78 L. Ed. 254 (1933); *Walk Haydel and Associates, Inc. v. Coastal Power Production Co.*, 934 F. Supp. 209 (E.D. La. 1996); *Airlines Reporting Corp. v. S and N Travel, Inc.*, 857 F. Supp. 1043 (E.D.N.Y. 1994)). Again, the Court runs into the problem that HFL's Complaint and exhibits demonstrate the existence of two separate assignments.  As for Kent Hytken's assignment, in his deposition he discusses the assignment of his claims against Defendants, but provides no business purpose for the assignment. Robert Hytken submitted an affidavit stating that he is the managing director of Partnership 1 LLC, and that as managing director he assigned any interest that Partnership 1 LLC might have "in the profits from the development of beachfront property located in Galveston, Texas" as a "corporate procedural matter" that was "done to insure that [HFL] has unencumbered rights against the defendants" in this lawsuit.  According to the affidavit, Partnership 1 LLC was a Texas corporation, but it is no longer in good standing.  Given that Robert Hytken's Assignment and his Affidavit are the only two places where the Court finds mention of Partnership 1 LLC, it is unable to determine whether there was any legitimate business purpose in Robert Hytken's Assignment because it is unable to determine what sort of interest if any Partnership 1 LLC had in the property.  HFL did not exist prior to any of the assignments that have been mentioned in this case, and HFL had no claim in this litigation until any

---

[4]In fact, HFL has no other assets or liabilities.

such assignments were executed—HFL's rights are dependent on the rights of the assignors and could not be encumbered by the assignors. This factor supports the conclusion that the assignment was improper and collusive.

### D. Timing of the Assignment

The fourth factor is whether the timing of the assignment suggests it was merely an effort to secure federal diversity jurisdiction. *See id.* at 922 (citing *Canton Indus. Corp. v. Mi-Jack Products, Inc.*, 944 F. Supp. 853 (D. Utah 1996)). The Robert Hytken assignment took place on October 20, 2005, the same day that this lawsuit was filed. Kent Hytken's assignment took place on either October 20, 2005, or October 21, 2005, according to his deposition testimony. The timing of the assignments unequivocally suggests that they were made in an effort to secure federal diversity jurisdiction.

### E. Control by the Assignor Over Litigation

The fifth factor is whether the assignor exercises any control over the conduct of the litigation. *See id.* at 922–23 (citing *Nike, Inc. v. Comercial Iberica de Exclusivas Deportivas, S.A.*, 20 F.3d 987 (9th Cir. 1994)). Kent Hytken is HFL's designated corporate representative, has been intimately involved in the creation of the corporation, and was the actual person involved in the negotiations with Defendants. One of his substantial roles in relation to HFL is the pursuit of this litigation. He participated in the decision with his son, Jordan Hytken, as to which lawyers to retain for the pursuit of this litigation, and he is the one who communicates with HFL's attorneys about this lawsuit. Kent Hytken is clearly in control of this litigation. The extent to which his father, Robert Hytken, also is participating in the control of this litigation cannot be determined. It appears to be insignificant. This factor also supports the finding that the assignment in this case was collusive and improper.

### F. Retention by the Assignor of Interest in Litigation

The final factor to be considered by the Court is whether the assignor retains any interest in the action, e.g., receiving a portion of the assignee's recovery. *See Harrell and Sumner Contracting Co., Inc.*, 546 F.2d at 1229; *Long & Foster Real Estate, Inc.*, 357 F. Supp. 2d at 923 (citing *Farmington Village Corp. v. Pillsbury*, 114 U.S. 138, 5 S. Ct. 807, 29 L. Ed. 114 (1885)). Neither Robert Hytken nor Kent Hytken has a direct interest in the litigation. Unlike some cases where an assignor retains an explicit right to the proceeds, in this case there is no evidence of such agreement. However, Robert Hytken is one of two shareholders of HFL, and would presumably profit from any recovery. Likewise, Jordan Hytken, Kent Hytken's son and the other shareholder, will profit from any recovery. There are no expenses or other business of HFL, so there is nowhere for any recovery to go but to the shareholders. In his deposition, Kent Hytken claimed that he will not receive anything if HFL prevails in this lawsuit, but given the machinations that have taken place thus far, the Court gives little weight if any to that assertion. However, since there is no clear indication or instruction that any recovery is to go to anyone other than HFL, the Court must find that this factor weighs against a finding of impropriety or collusion in the assignment.

After viewing the totality of the circumstances surrounding the assignment whereby HFL allegedly obtained its rights to the claims made, the Court is compelled to find that the assignment in this case was performed for the sole purpose of manufacturing federal diversity jurisdiction. "Section 1359 explicitly provides that the district court shall not have jurisdiction under such circumstances." *Harrell and Sumner Contracting Co., Inc.*, 546 F.2d at 1229. The substantial exhibits submitted by both Parties to this lawsuit provide no legitimate explanation why the assignment in this case was made other than the creation of federal jurisdiction.

**IV. Conclusions**

-10-

The Court finds that the assignment in this instance had the primary purpose of creating federal diversity jurisdiction in violation of 28 U.S.C. § 1359. Therefore, the Court lacks jurisdiction over this dispute. For that reason and the reasons stated above, Defendants' Motion to Dismiss for Lack of Subject Matter Jurisdiction is **GRANTED**, and HFL's claims against Defendants are **DISMISSED WITHOUT PREJUDICE**. However, while the facts of this case support a view that the *de facto* Plaintiffs are sharp and aggressive businessmen, there is nothing in the record even suggesting sanctionable conduct. Therefore, a Final Judgment will be issued contemporaneously with this Order, and pursuant thereto, each Party is to bear his or its own taxable costs, expenses, and attorneys' fees incurred herein to date.

**IT IS SO ORDERED**.

**DONE** this 28th day of March, 2006, at Galveston, Texas.

Samuel B. Kent
United States District Judge

-11-